Emily E. Howe (SBN 293964)
LAW OFFICES OF EMILY E. HOWE
7710 Balboa Avenue, Suite 325
San Diego, California 92111
Telephone:  (619) 800-6605
emh@howelaws.com

John Burton (SBN 86029)
THE LAW OFFICES OF JOHN BURTON
128 North Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 449-8300
jb@johnburtonlaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOPHIA BHANDARI, individually and as Successor in Interest to TONY GARZA WILSON, Deceased, and SIERRA WILSON and TONY PHILIP WILSON, individually,<br><br>    Plaintiffs,<br><br>    v.<br><br>NATIONAL CITY, a municipal corporation, NATIONAL CITY POLICE DEPARTMENT, CHIEF JOSE TELLEZ, OFFICERS JONATHAN TAYLOR and EVAN DAVIS, and CORPORAL CHARLES STEVENS, and DOES 1-50, inclusive,<br><br>    Defendants. | Case No.  **'21CV1652 BTM MDD**<br><br>**COMPLAINT FOR:**<br><br>1. Individual Liability (42 U.S.C. § 1983) --- Survival<br>2. Individual Liability (42 U.S.C. § 1983) --- Wrongful Death<br>3. Individual Liability (42 U.S.C. § 1983) --- Fourteenth Amendment<br>4. Municipal and Supervisory Liability (42 U.S.C. § 1983)<br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION AND VENUE

1. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983. Federal jurisdiction exists under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights).

2. Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b)(2) because the events, acts, or omissions giving rise to the claims occurred in the County of San Diego in the Southern District of California.

## PARTIES

3. Before his death Tony Garza Wilson, the Decedent, resided in San Diego County, California

4. Plaintiffs Sophia Bhandari, Sierra Wilson, and Tony Philip Wilson are Decedent's children. Each is competent to sue and brings this action as an individual, and each does so.

5. Decedent's causes of action are brought through his daughter, Plaintiff Sophia Bhandari, as his successor-in-interest pursuant to Cal. Civ. Proc. Code § 377.30. She files the declaration required by Cal. Civ. Proc. Code § 377.32.

6. Defendant National City (City) is a California municipal corporation. Defendant National City Police Department (NCPD) is an independent entity subject to suit.

7. At all times relevant to this Complaint, Defendant City was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the City, the NCPD, and their employees and agents complied with the laws of the United Sates and the State of California. At all relevant times, the City and the NCPD were the employers of Defendants Jonathan Taylor, Evan Davis, Charles Stevens, and Does 1-50.

8. At all times relevant to this Complaint, Defendant Jose Tellez is the NCPD Chief of Police, and its decisionmaker.

COMPLAINT

9. At all times relevant to this Complaint, Defendant Jonathan Taylor was an individual employed by National City and NCPD as a police officer and was acting in the course and scope of that employment under color of state law.

10. At all times relevant to this Complaint, Defendant Evan Davis was an individual employed by National City and NCPD as a police officer and was acting in the course and scope of that employment under color of state law.

11. At all times relevant to this Complaint, Defendant Charles Stevens was an individual employed by National City and NCPD as a police officer with the rank of corporal and was acting in the course and scope of that employment under color of state law.

12. Plaintiffs are ignorant of the true names, identities, and capacities of Does 1 through 50, inclusive. Therefore, Plaintiffs sue these defendants under the fictitious designations of Does 1 through 50. Plaintiffs are informed and believe that each of the Doe defendants is responsible in some manner for the acts and omissions alleged in this complaint and acted under color of state law.

13. All Defendants' actions alleged herein were done and performed by Defendants within the course, purpose, and scope of said agency, service, and employment, and under color of state law.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

14. Shortly after midnight on Sunday, September 29, 2019, separate callers contacted 911 to report a man on the front porch of 916 East 8th Street in National City. The man was breaking and throwing things. He did not appear to be armed. He was clearly having some form of emotional disturbance or psychotic break. He was not volitionally involved in any serious criminal conduct, although his appearance would be concerning to the average person. One caller said he was "not ok," another that he was "crazy." NCPD dispatched officers to deal with what was identified as a mental health emergency rather than criminal activity.

15. Each of the defendant officers activated a body-worn camera, although too late to document fully the initial verbal exchange between the officers and Tony Wilson. Defendants Taylor and Davis arrived first and observed a man obviously in the throes of a mental health crisis. He was standing on a narrow cement porch, about 4 feet wide, surrounded by trash and debris. He was wearing shorts and a collared shirt. He was obviously not armed. His hands were bleeding. The security screen door on the house was damaged, but still closed. The officers could see that Tony Wilson was an older gentleman and below average in size. He was, in fact, age 61, weighed 150 pounds, and stood 5 feet, 6 inches.

16. Both officers had firearms drawn and pointed. When he saw the officers, Tony put his hands high in the air, indicating surrender, The officers were still several yards away. Tony said: "Don't shoot, don't shoot."

17. Rather than maintain a safe distance and use words for control, Officers Taylor and Davis holstered and walked up to Tony, screaming at him to "get down." He immediately dropped to the cement porch on his hands and knees. In other words, as soon as Tony Wilson saw the police officers, he indicated that he was surrendering, stopped his agitated behavior, and then complied with their commands.

18. Even after Tony got down on his hands and knees, Officer Taylor continued to scream "get on the ground, get on the ground! Put your hands behind your back." Tony tried to comply, but he could not lie flat because the porch was too narrow, and he could not put his hands behind his back because he was on his hands and knees, and he did not want to stand up. Within seconds, without allowing Tony any opportunity to process the commands and without warning, Officer Taylor reached out, grabbed Tony by the back of the head or neck, and violently smashed his face into the concrete.

19. With Tony screaming in pain, Officer Taylor repeatedly shocked him with a Taser in drive-stun mode, a tool designed to inflict excruciating pain. There

was no legitimate purpose to the shocks. Officers Taylor and Davis yelled confusing commands about putting hands behind his back, when in fact Tony Wilson's hands were obviously pinned by the weight of the officers.

20. A third officer, Defendant Charles Stevens, a corporal, arrived. Instead of exercising command and control to protect Tony Wilson, he joined in, and along with Officers Taylor and Davis pinned Tony to the porch, holding him down so that he could not breathe effectively. Tony reflexively flailed his legs in response to being suffocated. In response, the officers ordered him to "stop kicking," which was not possible for a person in Tony's position. The officers made matters worse by increasing the pressure. Officer Taylor continued to drive-stun Tony for no purpose other than the wanton infliction of excruciating pain. This sadistic use of force elevated Tony's demand for oxygen at the precise time the officers' aggressive restraints were restricting his ability to breathe. Officers left Tony face down on the pavement as he went into cardiac arrest from the combined effects of the trauma and compression asphyxia.

21. Eventually, the officers, after checking Tony's clothing and pockets for belongings, rolled him over. They did not timely initiate CPR, even though he was not breathing and had no pulse.  The delay of medical care was a contributing cause of Tony's serious injuries and death.

22. The use of force against Tony was excessive and objectively unreasonable under the circumstances, especially because Tony was unarmed and never posed a threat.

23. Tony was revived by paramedics and taken by ambulance to Scripps Hospital, where he was diagnosed with anoxic encephalopathy, a brain injury due to oxygen deprivation caused by the cardiac arrest and lack of timely CPR. He was placed on life support. More than two weeks later, his family, following medical advice, took their father off life-support. Subsequently, Tony Wilson succumbed to the injuries Defendants inflicted, and died on October 15, 2019.

# FIRST CLAIM FOR RELIEF

## Individual Liability, Survival – 42 U.S.C. § 1983

24. Plaintiff Sophia Bhandari brings this cause of action as Decedent's successor-in-interest pursuant to Cal. Civ. Proc. Code § 377.30.

25. The Decedent had the Fourth Amendment right to be free from excessive force, including to be free from any use of force when no force was necessary, to be free from force when he was in the act of surrender, and to be free from force when complying with the officers' orders and commands. Decedent posed no threat and was not trying to flee. He was experiencing a mental-health emergency, not engaged in criminal conduct. He complied with the officers' commands and submitted to their authority. There was no need for any force.

26. All the force used by Taylor, Stevens, and Davis was excessive and unnecessary. Smashing Decedent's face into the concrete porch was unnecessary and excessive. Shocking Decedent repeatedly with a Taser while pinning him to the concrete until he asphyxiated was unnecessary and excessive.

27. Defendants Taylor, Stevens, and Davis, and in particular Defendant Stevens who arrived while the excessive force was being used, and was of higher rank, failed to intervene to prevent the other officers from using excessive force. Defendants Taylor, Stevens, and Davis, and each of them, was an integral participant in the use of excessive force.

28. As a proximate result of the foregoing, Decedent sustained pre-death pain and suffering and death. He is entitled to recover for his pre-death pain and suffering as well as for the loss of life.

29. The conduct of the individual Defendants justifies the imposition of punitive damages against the individual Defendants to punish them and deter them from engaging in similar conduct in the future, because it was malicious, oppressive and in reckless disregard of Decedent's rights.

## SECOND CLAIM FOR RELIEF

### Individual Liability, Wrongful Death – 42 U.S.C. § 1983

30. Plaintiffs bring this cause of action in their individual capacity pursuant to Cal. Civ. Proc. Code § 377.60, which is incorporated by § 1988.

31. The Decedent had the Fourth Amendment right to be free from excessive force, including to be free from any use of force when no force was necessary, to be free from force when he was in the act of surrender, and to be free from force when complying with the officers' orders and commands. Decedent posed no threat and was not trying to flee. He was experiencing a mental-health emergency, not engaged in criminal conduct. He complied with the officers' commands and submitted to their authority. There was no need for any force.

32. All the force used by Taylor, Stevens, and Davis was excessive and unnecessary. Smashing Decedent's face into the concrete porch was unnecessary and excessive. Shocking Decedent repeatedly with a Taser while pinning him to the concrete until he asphyxiated was unnecessary and excessive.

33. Defendants Taylor, Stevens, and Davis, and in particular Defendant Stevens who arrived while the excessive force was being used, and was of higher rank, failed to intervene to prevent the other officers from using excessive force. Defendants Taylor, Stevens, and Davis, and each of them, was an integral participant in the use of excessive force.

34. The conduct alleged above by Defendants Taylor, Stevens and Davis was both a cause-in-fact and proximate cause of the Decedent to be deprived of his civil rights protected under the United States Constitution and his death, entitling Plaintiffs, and each of them, for the loss of his love, society, companionship and support, and economic damages, including medical, funeral and burial expenses.

## THIRD CLAIM FOR RELIEF

### Fourteenth-Amendment Substantive Due Process

35. Plaintiffs bring this cause of action in their individual capacity as the children of Decedent. They have cognizable interests under the Fourteenth Amendment of the United States Constitution to be free from the state action that severed their familial relationships with their father, Tony Wilson.

36. The actions of Defendants Taylor, Stevens, and Davis, alleged above, along with other undiscovered conduct, including by Does, shocks the conscience. The individual defendants acted in reckless and deliberate indifference to the constitutional rights of Decedent and Plaintiffs, and with the purpose to harm. Decedent unrelated to any legitimate law enforcement objective.

37. The conduct alleged above by Defendants Taylor, Stevens and Davis was both a cause-in-fact and proximate cause of Plaintiffs to be deprived of their civil rights protected under the United States Constitution entitling Plaintiffs, and each of them, general and special damages, including emotional distress, for the loss of their father.

38. The conduct of Defendants Taylor, Stevens, and Davis was willful, wanton, malicious, with the reckless disregard for the rights and safety of Decedent and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages.

## FOURTH CLAIM FOR RELIEF

### Municipal and Supervisory Liability (42 U.S.C. § 1983)

39. Plaintiff are informed and believe, and on that basis allege, that the City and NCPD, and their decision makers, including but not limited to Chief Tellez, with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of Decedent and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices, customs and usages of, among other things,

40. Allowing employees to subject people to unreasonable uses of force against their persons when they are impaired and agitated, presenting with a mental health emergency rather than a law enforcement problem.

41. Failing to adequately train, supervise and control employees in the proper tactics to safely contain and secure persons who are in an agitated, irrational or delusional state using de-escalation tactics.

42. Failing to provide mobile mental health teams, and to adequately train, supervise and control employees in the proper use of medical and mental health resources, as well as backup, to assist with persons who are in an agitated, irrational or delusional state.

43. Failing to adequately train, supervise and control employees in the use of taser shocks in combination with prone restraints, including but not limited to the risk of compression asphyxia from multiple taser shocks followed by prolonged prone restraints to take into custody persons such as Decedent, who are impaired and agitated, but not engaged in serious criminal activity, and who may be suffering from pre-existing medical and psychiatric conditions, or drug intoxication, or both, which make such tactics particularly dangerous.

44. Failing to adequately train, supervise and control employees that impaired or agitated persons may have difficulty with certain social interactions, including interactions with law enforcement officers, including but not limited to difficulty understanding and following commands and directions.

45. Failing to adequately train, supervise and control employees that they should not take agitated or impaired persons into custody without taking into account and making proper accommodations for their current physical and mental condition and the related behavioral problems.

46. Failing to adequately train, supervise and control employees that they should not use tasers and other potentially lethal, or excruciatingly painful, weapons to control agitated or impaired persons without regard for the health consequences.

COMPLAINT

47. Failing to adequately train, supervise and control employees that chest compressions and other aggressive prone restraints impair breathing and can have catastrophic consequences, particularly when used on a person who is impaired or agitated, or who has been subjected to Taser current.

48. Failing to adequately train, supervise and control employees to monitor the respirations and pulse of agitated and impaired persons during an arrest, to place them in a recognized recovery position at the earliest opportunity, and to initiate CPR and other first aid as necessary.

49. Failing to compel employees to take their training into account, including the principles outlined above, and to follow that training when dealing with an impaired or agitated person.

50. Failing to adequately investigate and, when appropriate, discipline or retrain officers involved in misconduct.

51. Condoning and encouraging officers in the belief that they can violate the rights of persons such as Decedent with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

52. Failing to analyze critical incidents such as this one and take appropriate corrective action to prevent recurrences.

53. The foregoing list is illustrative and not exhaustive.

54. Plaintiff are informed and believe, and thereon alleges, that the City and NCPD, and their respective decision makers, including but not limited to Chief Tellez, ordered, authorized, acquiesced in, tolerated, permitted, or maintained custom and usages permitting the other defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs or usages set forth in the foregoing paragraph and its subparagraphs. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by defendants or on defendants' deliberate indifference, gross negligence, or reckless disregard to the safety, security, and rights of Decedent.

55. The training policies of Defendants City and NCPD were not adequate to train its officers to handle the usual and recurring situations with which they must deal, including the City's failure to train its officers with respect to bias and de-escalating and interacting with the National City community, the unsheltered, and the mental health. Defendants City and NCPD were deliberately indifferent to the obvious consequences of its failure to train its officers adequately and properly. The failure of Defendants City and NCPD to provide adequate training caused the deprivation of Plaintiffs' rights by Taylor, Stevens, and Davis; that is, Defendants' failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injury.

56. Upon information and belief, National City, NCPD and its Chief Jose Tellez, acting under color of law, who had final policymaking authority concerning the acts of Defendants Taylor, Stevens, and Davis, ratified the individual defendants' actions and violations of Decedent's and Plaintiffs' rights.

57. Upon information and belief, Chief Jose Tellez, acting under color of law and in his supervisory capacity, deprived Decedent and Plaintiffs of their constitutional rights. Specifically, Chief Tellez directed his subordinates in the acts and failures to act that deprived Decedent and the Plaintiffs of these rights, set in motion a series of acts by his subordinates, or knowingly refused to terminate a series of acts by his subordinates, that he knew or reasonably should have known would cause the subordinates to deprive Decedent and the Plaintiff of these rights; knew that his subordinates were engaging in these acts and knew or reasonably should have known that the subordinates' conduct would deprive Decedent and the Plaintiff of these rights; and failed to act to prevent his subordinates from engaging in such conduct; and disregarded the known or obvious consequence that a particular training deficiency or omission would cause his subordinates to violate Decedent's or the Plaintiff's constitutional right.

58. The foregoing acts and failures to act by Chief Tellez in his supervisory capacity actually caused his subordinates to deprive Decedent and the Plaintiffs of their

constitutional rights. Moreover, Chief Tellez engaged in conduct that showed a reckless or callous indifference to the deprivation by the subordinates of the rights of others and was so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

59. As a direct result, Tony Wilson was battered and killed, and Plaintiffs' constitutional rights were violated as alleged above, all to Plaintiffs' damages as alleged above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

A. Compensatory general and special damages in accordance with proof;

B. Exemplary damages against all Defendants except the City and NCSD in an amount sufficient to make an example of those defendants and to deter future misconduct

C. Costs of suit necessarily incurred herein;

D. Reasonable attorney's fees and expenses of litigation; and

E. Such further relief as the Court deems just or proper.

Dated:  September 20, 2021         LAW OFFICES OF EMILY E. HOWE
                                   THE LAW OFFICES OF JOHN BURTON


                                   By___s/ Emily E. Howe_____
                                       Emily E. Howe
                                       John Burton
                                       Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands trial by jury pursuant to Fed. R. Civ. P. 38(b).

Dated:  September 20, 2021.    LAW OFFICES OF EMILY E. HOWE
　　　　　　　　　　　　　　　THE LAW OFFICES OF JOHN BURTON


　　　　　　　　　　　By___s/ Emily E. Howe_____
　　　　　　　　　　　　　　Emily E. Howe
　　　　　　　　　　　　　　John Burton
　　　　　　　　　　　　　Attorneys for Plaintiffs