UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOPHIA BHANDARI, individually and as Successor in Interest to TONY GARZA WILSON, Deceased, and SIERRA WILSON and TONY PHILIP WILSON, individually,<br><br>Plaintiffs,<br>v.<br><br>NATIONAL CITY, a municipal corporation, NATIONAL CITY POLICE DEPARTMENT, CHIEF JOSE TELLEZ, OFFICERS JONATHAN TAYLOR and EVAN DAVIS; and CORPORAL CHARLES STEVENS, and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 3:21-cv-01652-BTM-MDD<br><br>**ORDER RE MOTION TO DISMISS**<br><br>**[ECF NO. 7]** |

Pending before the Court is Defendants' motion to dismiss the complaint for failure to state a claim. (ECF No. 7 ("Mot.").)[1] For the reasons discussed below,

---

[1] Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page.

the Court **GRANTS** in part and **DENIES** in part the motion.

## BACKGROUND

Plaintiffs Sophia Bhandari, Sierra Wilson, and Tony Philip Wilson are the children of the decedent in this action, Tony Garza Wilson ("Wilson"). (ECF No. 1 ("Compl."), 2 (¶ 4).) The complaint makes the following allegations. Shortly after midnight on Sunday, September 29, 2019, National City Police Department ("NCPD") dispatched officers in response to multiple calls concerning Wilson, who was "breaking and throwing things," and "clearly having some form of emotional disturbance or psychotic break." (*Id.* at 3 (¶ 4).)

Officers Taylor and Davis arrived first. Plaintiffs allege that the officers could see that Wilson was an older gentleman and below average in size, specifically, 5 feet, 6 inches and 150 pounds. (*Id.* at 4 (¶ 15).) Wilson was 61 years old. (*Id.*) Both officers had their firearms drawn and Wilson put his hands in the air, indicating surrender. (*Id.* (¶ 16).) Officers Taylor and Davis then screamed at Wilson to "get down" to which Wilson "immediately dropped to the cement porch on his hands and knees." (*Id.* (¶ 17).) Despite complying with the officers' demands to the best of Wilson's abilities given the size of the porch (about "4 feet wide"), and the lack of time to process the commands, Officer Taylor grabbed Wilson by the back of the head or neck and "violently smashed his face into the concrete." (*Id.* (¶ 18).) The complaint further alleges that Officer Taylor repeatedly shocked Wilson with a Taser in drive-stun mode and that there was no legitimate purpose to the shocks. (*Id.* (¶ 19).)

Corporal Stevens arrived and joined Officers Taylor and Davis in pinning Wilson to the porch and holding him down so Wilson could not breath. (*Id.* at 5 (¶ 20).) Wilson "flailed his legs in response to being suffocated," but the officers

---

numbers at the top of documents.

ordered him to stop kicking. (*Id.*) Officer Taylor continued to use the drive-stun on Wilson "for no purpose other than the wanton infliction of excruciating pain." (*Id.*) Wilson went into cardiac arrest from the combined effects of the trauma and compression asphyxia. (*Id.*)

The complaint alleges that the officers did not timely administer aid and Wilson was taken to Scripps Hospital, "where he was diagnosed with anoxic encephalopathy, a brain injury due to the oxygen deprivation caused by the cardiac arrest and lack of timely CPR." (*Id.* (¶¶ 21; 23).) After placing Wilson on life support for more than two weeks, the family, following medical advice, removed the life support. Wilson died on October 15, 2019. (*Id.* (¶ 23).)

Plaintiff Bhandari brings Wilson's cause of action as his successor-in-interest. According to Plaintiffs, the use of force against Wilson was "excessive and objectively unreasonable under the circumstances, especially because [Wilson] was unarmed and never posed a threat." (*Id.* (¶ 22).) Plaintiffs also bring a substantive due process claim, as well as municipal and supervisory liability claims under 42 U.S.C. § 1983 against National City ("City"), NCPD, and Chief Jose Tellez ("Tellez") for maintaining an unconstitutional policy or custom and failure to adequately train employees.

Defendants now move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8, each pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief" and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).

A complaint may survive a motion to dismiss only if it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "[l]eave to amend should be granted unless the pleading 'could not possibly be cured by the allegation of other facts.'" *Velez v. Cloghan Concepts LLC*, 387 F. Supp. 3d 1072, 1078 (S.D. Cal. 2019) (quoting *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003)).

## DISCUSSION

**1. Survival Action**

Defendants claim that Plaintiffs have failed to establish standing to bring a survival action because the required declaration of the successor in interest was filed after the complaint. They also claim the untimely declaration is deficient because it does not contain all the required statutory language and Plaintiffs provided no signature by the siblings attesting to their agreement that Plaintiff Bhandari be the successor in interest.

In § 1983 actions, a decedent's survivors may bring a claim for the violation of their or the decedent's substantive constitutional rights. *Ruiz v. City of San Diego*, 2020 U.S. Dist. LEXIS 227467, *4 (S.D. Cal. 2020). The party seeking to

bring the survival action bears the burden of demonstrating that state law authorizes a survival action, and that the plaintiff meets the requirements to bring the survival action. *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

California law provides that a survival action "may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." Cal. Civ. Code § 377.30. The person seeking to commence an action as the decedent's successor in interest is required to "execute and file an affidavit or declaration" stating, *inter alia*, (1) the decedent's name; (2) the date and place of decedent's death; (3) that no proceedings are pending in California for the administration of the decedent's estate; (4) either that the declarant is the decedent's successor in interest or is authorized to act on behalf of the decedent's successor in interest; and (5) that no other person has a superior right to commence the action or proceeding for the decedent. Cal. Civ. Code § 377.32(a). Additionally, the plaintiff must attach a certified copy of the decedent's death certificate to the affidavit or declaration. Cal. Civ. Code § 377.32(c).

As a preliminary matter, there is no statutory command that the declaration be filed with the complaint. *See Parsons v. Tickner*, 31 Cal. App. 4th 1513, 1523-24 (1995) ("[Section § 377.32] does not require that the affidavit be filed as a condition precedent to commencing or continuing the action."). After filing the complaint, Plaintiffs provided a declaration with an attached death certificate noting the time and place of death as mandated. (ECF No. 6.) This was permissible.

Defendants further argue that, while Plaintiff Bhandari's declaration acknowledges that all siblings have equal right to commence the action, she qualifies the statement by attesting the siblings agreed Bhandari should be the successor in interest in this action. Section 377.30's express language provides for "the decedent's successor in interest" as a singular individual. Cal. Civ. Code § 377.30. Other provisions of the survival statute "indicate that a single successor in

interest may properly commence an action, even if other 'beneficiaries' exist." *Estate of Elkins v. Pelayo*, 2020 U.S. Dist. LEXIS 89857, *16-17 (E.D. Cal. 2020). In that light, Plaintiff Bhandari may proceed as the sole successor in interest despite having siblings. There is also no requirement that the siblings must affirm their agreement via signatures. Instead, § 377.33 "authorizes courts 'to issue orders to ensure that awards of survival damages are properly administered by successors in interest" because "there may be beneficiaries who are not acting as successors and who may be prejudiced by the single party who is acting as the successor in interest." *Id.* at *18. *See also* Cal. Law Revision Com., West's Ann. Cal. Code Civ. Proc. § 377.33. Accordingly, Plaintiffs have proceeded properly under the statute.

### 2. Qualified Immunity

Defendants seek dismissal of Plaintiffs' first and second claims of excessive force on the assertion of qualified immunity.[2]

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to Plaintiff, demonstrate that the Defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established" at the time it is alleged to have been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Although *Saucier* originally required the Court to answer these questions in order, the U.S.

---

[2] Defendants argue that Plaintiffs do not properly allege any conduct by Tellez as part of their first or second causes of action. The complaint states that the first and second claims for relief are based on individual liability, and Plaintiffs have clarified that Tellez is not a party to the first or second claims for relief and is only alleged to be liable in his supervisory capacity.

Supreme Court has since held that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As alleged, the officer Defendants used excessive force in violation of Wilson's Fourth Amendment rights by smashing his head into the concrete and shocking him with a Taser during apprehension. The complaint alleges that Wilson was unarmed, posed no threat, and was not trying to flee when officers arrived on scene. Instead, according to the allegations in the complaint, Wilson tried to comply with the officers' demands despite the narrowness of the porch and without time to process the commands. Construing the facts and inferences in the light most favorable to Plaintiffs, Wilson was not resisting at all when Officer Taylor "smashed his face into the concrete porch" and continued to shock him with a Taser in drive-stun mode. (Compl., 4-5 (¶¶ 18-20).) Even if Wilson's failure to comply with the officers' orders could be perceived as some degree of resistance as Defendants argue, genuine issues of material fact exist as to whether the officers used excessive force in response to Wilson's resistance. Thus, "the next . . . step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201.

A right is "clearly established" when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (citation omitted). This does not require a prior case on all fours. *See Deorle v. Rutherford*, 272 F.3d 1272, 1274-75 (9th Cir. 2001) (law may be clearly established "notwithstanding the absence of direct precedent … otherwise, officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct"); *but see Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) ("[p]recedent involving similar facts can help move a case beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide an

officer notice that a specific use of force is unlawful.") However, "the clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela*, 138 S. Ct. at 1152.

A claim against law enforcement officers for use of excessive force is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (citation omitted). An excessive force analysis requires evaluating "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The Ninth Circuit has held that "active resistance is not to be found simply because of a failure to comply with the full extent of an officer's orders," and various applications of force in such situations have been deemed unreasonable. *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012). *See, e.g.*, *Rutherford*, 272 F.3d at 1286 (nonlethal lead shot wrapped in cloth case against mentally unstable person was unreasonable); *Save CCSF Coal v. Lim*, 2015 U.S. Dist. LEXIS 69195, *14 (N.D. Cal. 2015) (allegation that officers smashed plaintiff's head into the ground causing a concussion with no threat posed was a plausible claim of excessive force).

At the very least, the continuous tasing until asphyxiation after Wilson was brought to the ground and apprehended is clearly unsanctioned by law. *See LaLonde v. Cty. of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000) (repeated use of pepper spray after arrestee surrenders and is helpless was excessive use of force). Given the circumstances alleged and viewed in the light most favorable to

the Plaintiffs, the officers are not entitled to qualified immunity for their use of force at this stage of the proceedings.[3]

### A. Officer Davis and Corporal Stevens

Defendants claim that Plaintiffs have not pled constitutional violations by Officer Davis or Corporal Stevens. Plaintiffs assert that Davis and Stevens are liable through integral participation and failure to intervene theories.

"An officer's liability under section 1983 is predicated on his 'integral participation' in the alleged violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (citing *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996)). "A mere bystander" who had "no role in the unlawful conduct" is not subject to liability. *Chuman*, 76 F.3d at 294-95. However, "integral participation" does not require that each officer's own actions rise to the level of a constitutional violation. *Boyd v. Benton Cty.*, 374 F.3d 773, 780 (9th Cir. 2004). For example, an officer who does not enter an apartment but stands armed at the door while other officers conduct an unlawful search can be a "full, active participant" in the search. *Id* (citing *Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir. 1989)). Additionally, an officer may be held liable when he fails to intercede when a fellow officer violates the constitutional rights of a citizen and has a "realistic opportunity" to do so. *Anderson v. Hartley*, 2011 U.S. Dist. LEXIS 134793, * 4 (E.D. Cal. 2011).

As alleged, Officer Davis, who arrived with his gun drawn with Officer Taylor, helped pin down Wilson while Officer Taylor shocked him with a Taser. (Compl., 4-5 (¶¶ 15; 20).) Corporal Stevens, a higher-ranking officer, is alleged to have refused to intervene and command the two other officers to stop tasing Wilson,

---

[3] Determining claims of qualified immunity "at the motion-to-dismiss stage raises special problems for legal decision-making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). It puts the Court in the difficult position of deciding "far-reaching constitutional questions on a non-existent factual record." *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004). But dismissal based on qualified immunity is not appropriate unless it can be determined based on the complaint alone that qualified immunity applies. *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016).

despite Wilson having been clearly apprehended. (*Id.* ¶ 20.) Instead, it is alleged that Corporal Sevens joined in pinning Wilson down. Defendants assert that neither Officer Davis nor Corporal Stevens could have anticipated that Officer Taylor would smash Wilson's head into the concrete or shock him with the Taser. But both aided in pinning Wilson down, and Officer Davis was present during the entire encounter with Officer Taylor. Accordingly, the complaint asserts plausible allegations of liability as to all three officers and each may be held liable.

### 3. Substantive Due Process—Government Interference with Parent-Child Relationship

Plaintiffs' Fourteenth Amendment substantive due process claim is grounded in the alleged governmental interference with the familial relationship between Plaintiffs and their deceased father, Wilson. Defendants argue Plaintiffs' claim is duplicative of their excessive force claim and must instead be brought under the Fourth Amendment. Regardless of the applicable standard, Defendants claim that Plaintiffs' allegations are unsupported by facts beyond conclusory statements.

The Ninth Circuit has recognized that a "child's interest in her relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty interest" under the Fourteenth Amendment, distinct from an excessive force claim under the Fourth Amendment. *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). To state a cause of action for governmental interference with the familial relationship, the plaintiff must show that the police conduct "shocks the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir, 2008). This is a high bar, "which 'only the most egregious official conduct' meets." *K.T. v. Pittsburg Unified Sch. Dist.*, 219 F. Supp. 3d 970, 980 (N.D. Cal. 2016). In determining whether excessive force shocks the conscience, the Court first considers "whether the circumstances are such that actual deliberation [by the officer] is practical." *Porter*, 546 F.3d at 1137. "Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience. On the other hand,

where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).

The complaint alleges that the officers acted both in "reckless and deliberate indifference" and "with the purpose of harm." (Compl., 8 (¶¶ 36).) *Gibson v. Las Vegas Metro. Police Dep't*, 2013 U.S. Dist. LEXIS 31610, *9 (D. Nev. 2013) ("[t]o successfully plead a violation of her fundamental right to familial association under the Fourteenth Amendment, Plaintiff may plead either or both standards."). Plaintiffs allege that the officers committed an unnecessary lethal assault on Wilson, a surrendering, unarmed, elderly, and below-average-size man. Specifically, they allege that "[w]ithin seconds, without allowing Tony any opportunity to process the commands and without warning, Officer Taylor reached out, grabbed Tony by the back of the head or neck, and violently smashed his face into the concrete." (Compl., 4 (¶ 18).) Plaintiffs further allege that Officer Taylor repeatedly shocked Wilson with a Taser after he was brought to the ground "with no legitimate purpose." (*Id*. at 4-5 (¶ 19).) Ultimately, the officers' conduct resulted in cardiac arrest and death. (*Id*. at 5 (¶ 20; 23).)

These facts, taken as true, plausibly establish either deliberate indifference or a purpose to harm. A jury could reasonably conclude that the officers could have allowed Wilson an opportunity to process the commands before smashing his face into the concrete and, when Wilson was clearly subdued, continuously tased him with reckless and deliberate indifference to his safety. Even taking into account the perceived exigency of the circumstances, a "purpose to harm" can be inferred from the use of force combined with the lack of legitimate law enforcement objectives, such as the repeated tasings after Wilson was subdued. *McGowan v. Cty. Of Kern*, 2018 U.S. Dist. LEXIS 96236, *19-20 (E.D. Cal. 2018). In that light, the Court is not persuaded by the Defendants' arguments which fail to consider the specific

facts alleged.

### 4. Municipal and Supervisory Liability

#### A. NCPD As a Separate Suable Entity

The Court will first address whether Plaintiffs may bring a claim for municipal liability against NCPD as a separate entity from National City. Defendants argue NCPD is not a proper defendant because, as an agency of National City, the claims against NCPD are duplicative of Plaintiffs' claims against National City. Plaintiffs argue they are separate entities, each subject to liability.

Municipal police departments are "public entities" under California law and thus are subject to suit in federal court for alleged civil rights violations. *Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 605 (9th Cir. 1986), *Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621, 624 n.2 (9th Cir. 1988). *See* Fed. R. Civ. P. 17(b); Cal. Gov't Code §§ 811.2. "However, courts routinely dismiss police departments as duplicative defendants where the claims against a city and its police department arise from the same facts." *Mann v. City of Chula Vista*, 2020 U.S. Dist. LEXIS 178185, *8 (S.D. Cal. 2020) (citing examples of courts holding as duplicative claims against both police departments and cities). Here, Plaintiffs allege the same claims against both NCPD and National City, premise these claims on the same facts, and describe both entities conjunctively in the complaint. Therefore, the Court finds that the claims against NCPD are duplicative of the claims against National City with no meaningful distinction. National City Police Department is dismissed as a Defendant.

#### B. Municipal and Supervisor Liability Against National City and Chief Tellez

Plaintiffs allege the policies, practices, and customs maintained by National City and Tellez were not appropriate for situations where police encounter persons experiencing mental health emergencies and directly contributed to a

pattern of constitutional and statutory violations. Defendants argue Plaintiffs base their claim on conclusory statements such as "upon information and belief" and are insufficient to state a claim against National City or Tellez.

"[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipality may be liable under § 1983 for monetary, declaratory, or injunctive relief where the constitutional deprivation was caused by the implementation or execution of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. "Proof of random acts or isolated events are insufficient to establish custom." *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995).

To establish municipal liability, Plaintiffs must show the decedent: (1) was deprived of a constitutional right; (2) the city had a policy; (3) the policy amounted to deliberate indifference to [the decedent's] constitutional right; and (4) the policy was the "moving force behind the constitutional violation." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996). Additionally, a plaintiff alleging *Monell* liability based on a failure to train must identify specific deficiencies in the training program that must be closely related to the ultimate injury. *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001). To be sure, "a local government's liability under § 1983 is at "its most tenuous," when the claim is based on a failure to train. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Plaintiffs' *Monell* claim is based on alleged deficient policies, practices, and customs and a "failure to adequately train, supervise and control employees in the proper tactics to safely contain and secure persons who are in an agitated, irrational or delusional state using de-escalation tactics."[4] These allegations are

---

[4] Plaintiffs elaborate on these alleged deficiencies in the complaint. (Compl., 8-11 (¶¶ 39-55).)

contextualized by the assertion that Wilson, unarmed, elderly, and below-average in size, was having a mental health crisis when Officer Taylor smashed his face into the concrete and subjected Wilson to unnecessary tasings while Wilson tried to comply with the officers' demands, providing a basis for the excessive force claim. But Plaintiffs allegations are more about policy alternatives and not what the specific policy here provided for and how the policy led to a pattern of unconstitutional conduct. *See A.E. ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (finding "a bare allegation that the [individual officers'] conduct conformed to some unidentified government policy or custom" is insufficient to state a *Monell* claim). While Plaintiffs cite to *Deorle v. Rutherford* for the proposition that contemporary law enforcement standards mandate that mental illness be taken into account, *Rutherford* explicitly declines to prescribe law enforcement best practices when encountering a suspect. 272 F.3d at 1283 ("[w]e do not adopt a per se rule establishing two different classifications of suspects: mentally disabled persons and serious criminals. Instead, we emphasize that where it is or should be apparent to the officers that the individual involved is emotionally disturbed, that is a factor that must be considered in determining, under *Graham*, the reasonableness of the force employed). The Court agrees with Defendants that Plaintiffs allegations as to the policy are conclusory and insufficient to support a claim.

Moreover, Plaintiffs provide no examples of prior incidents to establish a pattern of violations or that there was an established policy or custom of the like alleged by Plaintiffs. *See Hyer v. City & Cty. of Honolulu*, 2020 U.S. Dist. LEXIS 223621, *20 (D. Haw. 2020) ("[c]ourts require a plaintiff to plead multiple incidents of alleged violations in order to allow a *Monell* claim based on policy, practice, or custom to proceed"), *Estate of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1211 (E.D. Cal. 2019) ("[p]laintiffs have included no information on investigations, or lack thereof; no information on disciplining or reprimanding of

officers, or lack thereof; and so forth. *Starr* and its progeny have set a higher pleading standard than formerly applied in § 1983 actions, including *Monell* claims. A plaintiff must articulate theory and facts giving rise to a plausible inference of deliberate indifference, and here, there are no facts concerning subsequent action or inaction in the wake of the incidents alleged by Plaintiffs"), *see also Bauer v. City of Pleasanton*, 2021 U.S. Dist. LEXIS 103627, *20 (N.D. Cal. 2021) (plaintiffs alleged prior incidents of lethal force to support *Monell* claim). While the standard set forth in *City of Canton v. Harris* permits plaintiffs to move forward with *Monell* claims without alleging multiple instances of violations if the need for further training is "obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need," 489 U.S. 378 at 390 (1989), the Court does not find that Plaintiffs have established "obvious" need here. The complaint fails to establish facts that plausibly allege that the encounter with Wilson was beyond a tragic one-off incident.

      Plaintiffs further allege that Tellez ratified the actions of the officers, but "a mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (cleaned up); *see Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000) (supervisors can be liable for "1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others."). Plaintiffs allege Tellez knew of the alleged policy, ratified it, and disregarded the known or

obvious consequence that the policy would violate the decedent's or Plaintiffs' rights. (Compl., 11 (¶¶ 56-57).). Still, Plaintiffs fail to define the policy and how it rose to a constitutional deficiency. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, (1985) ("[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy. . . ."). Plaintiffs argue Tellez is "no doubt familiar with law-enforcement policies across the nation that recognize the risks of positional asphyxia, and that direct officers to place suspects in recovery positions when safe to do so to minimize such risks. That was the subject of Derek Chauvin's televise[d] trial for the murder of George Floyd earlier this year." (ECF No. 8, at 14.) However, this speculative assertion is made outside the pleadings and does not establish the policy that National City maintains or the deficiencies that rose to a constitutional violation.

Accordingly, Plaintiffs have failed to allege a proper *Monell* claim. Defendants' motion to dismiss Plaintiff's Fourth claim is **GRANTED**.

## CONCLUSION

For the reasons discussed above, the Court **DENIES** the motion to dismiss as to Plaintiffs' First, Second, and Third Claims for Relief. The Court **GRANTS** the motion to dismiss Plaintiffs' Fourth Claim for Relief. National City Police Department is dismissed as a defendant. Plaintiffs are granted leave to amend their Fourth Claim for Relief to cure the deficiencies described above. Plaintiffs must file an Amended Complaint within 45 days of the entry of this order.

**IT IS SO ORDERED.**

Dated:  May 2, 2022

_____
Honorable Barry Ted Moskowitz
United States District Judge